**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CIVIL ACTION NO. 07-34-JBC**

**LINDA JOHNSON,**                                                                                          **PLAINTIFF,**

**V.**                                            **MEMORANDUM OPINION AND ORDER**

**MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,**                                     **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \***

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Disability, Disability Insurance Benefits, and Supplemental Security Income (DE 11, 12).  The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I. Overview of the Process**

Judicial review of the decision of an administrative law judge ("A.L.J.") to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).  "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

1

adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility.  *See id.* Rather, the A.L.J.'s decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The A.L.J., in determining disability, conducts a five-step analysis.  At Step 1, the A.L.J. considers whether the claimant is performing substantial gainful activity; at Step 2, the A.L.J. determines whether one or more of the claimant's impairments are "severe"; at Step 3, the A.L.J. analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the A.L.J. determines whether the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the A.L.J. determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

## II. The A.L.J.'s Determination

The plaintiff is a forty-eight-year-old female.  She attended school into the ninth grade, attending special education classes. DE 11-2, 1.  The plaintiff filed an

application for supplemental security income benefits on August 23, 1993, and was awarded benefits on June 4, 1994, when A.L.J. Norman L. Marcus found she was disabled as of her application date because of borderline intellectual functioning and major depression.  AR 8C.   On November 1, 2000, the Social Security Administration determined her disability had ceased due to significant medical improvement.  On September 22, 2003, A.L.J. Ronald M. Kayser upheld this decision.  The A.L.J.'s decision was reversed and remanded by the Appeals Council on May 20, 2004 and, on February 17, 2005, the A.L.J. had another hearing with the plaintiff present and represented by Lucy Turley, a non-attorney representative.  On April 13, 2005, A.L.J. Kayser again issued a ruling adverse to the plaintiff, which is at issue in this appeal.  AR 8C, 8K.

At Step 1, the A.L.J. found the plaintiff "did not engage in any substantial gainful activity since" she was found to be disabled on August 23, 1993.  At Steps 2 and 3, the A.L.J. found the plaintiff "currently has borderline intellectual functioning" but "[t]he medical evidence establishes that the claimant does not have an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1, Subpart P, Regulations No. 4."  AR 8J-8K.  While at Step 4, the inquiry into whether the plaintiff can perform past relevant work, the A.L.J. found that the plaintiff "has no public work history," at Step 5, he found that

> [c]onsidering the types of work the claimant is functionally capable of performing in combination with her age, education and work

3

experience, she can be expected to make a vocational adjustment to work that exists in significant numbers in the national economy. Examples of such jobs include work as a janitor/cleaner; kitchen/food prep worker; and, bench assembly.

AR 8J-8K.  In his discussion of other work, the A.L.J. also noted the plaintiff "tests at the upper end of mildly mentally retarded range and the lower end of borderline intellectual functioning (BIF) range but functions at the BIF level."  AR 8I.

The A.L.J. found that "[t]he claimant's testimony was not credible as to the general nature of her condition" but that her "residual functional capacity for a full range of work is reduced by non-exertional limitations."  AR 8K.  These limitations were recounted as follows:

- "fair" (defined as "satisfactory") ability to follow work rules; relate to co-workers; deal with the public; deal with work stresses; maintain attention and concentration; understand, remember and carry out detailed, but not complex, job instructions; relate predictably in social situations; and, to maintain personal appearance;
- "good" (defined as "more than satisfactory") to "fair" ability to interact with supervisors; understand, remember and carry out simple job instructions; behave in an emotionally stable manner; and, demonstrate reliability;
- "poor" (defined as "limited but not totally precluded") ability to understand, remember and carry out complex job instructions; and,
- "fair" to "poor" ability to use judgment and to function independently.

AR 8I.  Consequently, the A.L.J. concluded by finding that "[t]he claimant has not been under a disability as defined in the Social Security Act since November 1, 2000."  AR 8K.

**III. Legal Analysis**

4

The plaintiff contends that the A.L.J. made two errors.  First, she contends that she does meet the requirements of Listing 12.05(c).  Second, she contends that the testimony of the vocational expert ("VE") consulted by the A.L.J. was insufficient to satisfy the burden carried by the defendant.  DE 11-2, 7-10.

**B.      Step Two Severity Analysis and Listing 12.05(c)**

"[T]he step two severity regulation codified at 20 C.F.R. §§ 404.1520(c) and 404.1521 has been construed as a *de minimis* hurdle in the disability determination process. . . .  Under the prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted).  Despite this low bar for finding an impairment is severe at Step 2, "the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint."  *Id.* at 863 (quoting *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)).

Listing 12.05(c) states that "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R.  pt. 404, subpt. P, app. 1, § 12.05.  The required level of severity for mental retardation is met with "[a] valid verbal, performance or full scale IQ of 60 through 70 and a physical or

other mental impairment imposing an additional and significant work-related limitation of function." *Id.*  Moreover, "[i]n cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, [the Social Security Administration uses] the lowest of these in conjunction with 12.05."  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(D)(6)(c).

The plaintiff meets the first aspect of Listing 12.05, that she has a severe impairment in her mental functioning, because Dr. Gary Dunn, a psychologist, found that "Ms. Johnson's Verbal IQ was measured at 64."  AR 299A.

The plaintiff asserts the second aspect is also met because "Dr. Dunn diagnosed Ms. Johnson with a Depressive Disorder NOS vs. Adjustment Disorder with Depressed Mood, and assessed funtional restrictions on her ability to handle stress in the workplace, deal with deadlines, maintain attention and concentration, handle tasks requiring attention to many details, and work independently."  DE 11-2, 8.  These arguments by the plaintiff are unavailing, however, because notwithstanding Dr. Dunn's diagnosis, the record contains substantial evidence supporting the A.L.J.'s conclusion at Step 2.

The A.L.J. relied on the testimony of Dr. Doug McKeown, a psychologist, who reviewed the plaintiff's medical records and concluded "from the overall [history] of the claimant with her activities of daily living that she is adaptively in the borderline intellectual range."  AR 8H.  The testimony of a reviewing health

6

expert, when "based on the evidence of record, [may represent] substantial evidence to support the Secretary's decision." *Hale v. Sec'y of Health and Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987). *See also Barker v. Shalala*, 40 F.3d 789, 794-95 (6th Cir. 1994).

Although the plaintiff points to Dr. Dunn's diagnostic impression that "it is very likely that Ms. Johnson is suffering from symptoms of depression and anxiety," Dr. Dunn also noted that the results he reviewed "suggest the possibility that she over-endorsed psychiatric symptoms," AR 300, and such an equivocal finding, even from a treating physician, is not entitled to controlling weight. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) (noting complete deference to the treating physician is required only "if the treating physician's opinion is based on sufficient medical data"). Therefore, Dr. McKeown's opinion can constitute substantial evidence supporting the A.L.J.'s conclusion at Step 2.

The A.L.J. also rejected the possibility that the plaintiff's physical ailments rise to the level of a significant impairment of work-related function. In order for obesity to statisfy the second inquiry of Listing 12.05, it must "significantly limit[] an individual's physical or mental ability to do basic work activities," "[t]here is no specific level or weight or [body-mass index] that equates with a 'severe' or 'not severe' impairment," and the A.L.J. shall "do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." SSR 02-1p(6)-(7). Absent evidence showing the plaintiff's

7

weight impaired her ability to do basic work activities, the court cannot question the A.L.J.'s finding on this issue.  Furthermore, even a recommendation by Dr. Gary Bray that the plaintiff not engage in "lifting greater than 5-10 lbs for one week," DE 11-2, 9 (citing AR 224), when combined with the plaintiff's obesity, does not require a finding of severe impairment under Listing 12.05.

**B.     Step Five and the Sufficiency of the VE's Testimony**

The plaintiff contends the A.L.J. erred by not asking the VE to consider someone with "poor" capacity to use judgment in the workplace or function independently in his hypothetical question.  DE 11-2, 11.  While Dr. Dunn did find she had such limitations, Dr. McKeown found the plaintiff's capacity in these areas was actually "fair to poor," AR 375, and, because his findings constitute substantial evidence upon which the A.L.J. may rely, they can justify "the factual assumptions underlying the hypothetical."  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987).  Therefore, the A.L.J.'s use of "poor or limited" instead of "poor" in his hypothetical question to the VE, AR 362, is supported by substantial evidence.

The A.L.J.'s assumption in his hypothetical question to the VE that the plaintiff can engage in "medium work," AR 379-81, instead of only "light work" as she contends, was also supported by substantial evidence.  The plaintiff again points to physical ailments and obesity.  DE 11-2, 10.  However, the one-week limitations imposed by Dr. Bray, AR 224, and a simple finding of obesity, AR 8I

8

n.9, do not require the A.L.J. to conclude that the plaintiff is fit only for light work.

**IV. Conclusion**

Accordingly,

**IT IS ORDERED** that the defendant's motion (DE 12) is **GRANTED** and the

plaintiff's motion (DE 11) is **DENIED**.

Signed on  March 4, 2008

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY